Due to technical difficulties, there are unrecorded portions of this oral argument. The appellant is the Attorney General, Mr. Wilson. Mr. Mills, you represent the appellant, as I understand. Yes, Your Honor. Good to have you with us and look forward to your argument. Thank you, Your Honor. May it please the Court. South Carolina's Act advances its important interests from the outset of pregnancy in protecting unborn life and maternal health. Under the Act, the abortionist must give the mother the opportunity to view an ultrasound, hear her unborn child's heartbeat, and receive information about her child's development. If the abortionist doesn't do those things, the mother, under the Act, can sue him for at least $10,000. The abortion centers here are trying to take away that right from the very women they purport to represent. They don't assert their own rights, and they don't directly challenge these provisions or most others. Yet the District Court enjoined them all. Though the underlying policy questions are controversial, the three legal issues presented here are straightforward under established rules of federal litigation. The parties who brought this case do not have third-party standing or a cause of action under Section 1983. They have a unique... Counsel, sorry, can I just ask you a question about the issues that are before us? Are you challenging on appeal the District Court's holding on likelihood of success that the fetal heartbeat ban is unconstitutional? We continue to challenge that. That's the single challenge provision, Your Honor. We continue to challenge that below. That's not an issue on this appeal, so you may assume for purposes of our severability argument here that the District Court's holding on that issue was fine. So for our purposes, you're conceding the heartbeat ban is unconstitutional? No, Your Honor, we're not conceding that. We are conceding for purposes of the severability. You may assume that that provision won't go into effect, but we obviously disagree with the District Court's finding, even as to the single challenge provision. But you're not challenging that ruling? That is not an issue before this court. That ruling stands for purposes of our appeal. That's right, Your Honor. It stands. I'm not assuming that it stands. That's right. We've not challenged it on this appeal. So you do not challenge that you are not likely to succeed on the merits, correct? That's not correct, Your Honor. We do not challenge that we are not likely to succeed as to the Section... ...someone else's. So going back to what I was saying, they don't have third parties standing because they have a unique conflict of interest in trying to deprive the women they supposedly represent of statutory rights against them. And dozens of precedents say that Section 1983 claims are limited to... What's the conflict? I think it's that if an abortionist doesn't follow the Act, the mother can sue him for $10,000. And here, the abortion centers are trying to take away that right of the mother, of the very person they purport to represent. There is no case that sanctions third-party standing in the face of this sort of conflict of interest. Indeed, if a conflict of interest means anything for third-party standing, this has to be one. It must be the case that a third party cannot come into court and say, First party, you won't be able to sue me anymore, but I'm asserting your rights. So... So... Okay, go ahead. Even if the plaintiff's ear had standing in the cause of action, they would have no plausible argument to extend any preliminary injunction beyond the single challenge provision. Well, let's go back to standing then. So what precedent do you have that Planned Parenthood does not have third-party standing? Well, I would say the case we cited in our blue brief on page 23, the case we cited in our gray brief on page 5... Why don't you just say the name of the case? Do you have one? Well, yes, Your Honor. There are a bunch of them. One of them would be this court's decision in Stanley v. Darlington County School District, 84F 3rd 707. Do you have a United States Supreme Court case that says that clinics do not have third-party standing in these cases? Well, Your Honor, the question isn't about abortion clinics generally. This question has never been before the Supreme Court. A clinic has never been before the Supreme Court. Okay, well, my question was about abortion clinics generally then. Do you have any U.S. Supreme Court cases that say that clinics that provide abortions or doctors that provide abortions do not have third-party standing on behalf of their patients? If they are trying to deprive their patients of rights, then Elk Grove says that they don't have third-party standing because Elk Grove says that even a potential conflict of interest prohibits third-party standing. If that's true, then here where you have an actual inescapable conflict of interest, if we win, the women we purport to represent can no longer get $10,000 from us. That must be a conflict of interest sufficient to destroy third-party standing. If in Elk Grove, even a potential conflict of interest between a father and his son was sufficient to eliminate the possibility of third-party standing. What was the conflict of interest in Elk Grove? It was about the Pledge of Allegiance and whether the father's interests were actually the same as the child's. Okay, well, that's far different than a healthcare provider and patient. But I guess you premised your answer to me on if we're talking about this conflict of interest. Okay, what if we do not agree with you that there's this conflict of interest? Is there any Supreme Court precedent that healthcare providers that provide abortions do not have third-party standing on behalf of their patients? Putting aside all the conflict of interest, of which we believe there are several, the $10,000 being the most obvious, then even under the long-settled test for third-party standing, they have to allege at least a close relationship and a hindrance. I asked you for a case. Sure, Kowalski. The Kowalski case says that parties have to allege, third parties have to allege, a close relationship with the first party and a hindrance to that party in bringing suit. They've never attempted to do that here. And Kowalski involves healthcare providers that provide abortions? No, Your Honor. Okay, well my question was, do you have any United States Supreme Court authority that says that healthcare providers that provide abortions do not have third-party standing on behalf of their patients? No, Your Honor, because in other cases that have involved… Okay, then now you can go on. Thank you, Your Honor. There is no precedent. See? Go ahead. I'll try not to interrupt you the next time if you just answer me. Your Honor, with all due respect, what there is not precedent for is a first party being deprived of their statutory rights against the third party in the exact same suit. There is no precedent for that sort of conflict of interest to exist and for third-party standing to be found. In other cases, I agree with Your Honor, abortion providers have been able to show that there's a close relationship and that there's a hindrance and that there's no conflict of interest. But here, the abortion providers haven't even attempted to show those things. They've refused to discuss them at all. They haven't alleged the predicates. And as this court said in Freilich, which Judge King joined, a failure to allege or prove even one of those requirements is fatal to any claim of third-party standing. So whatever happened in the Supreme Court's other abortion cases, where the facts were different and the allegations were different, and most importantly, the law was different, those are different from this case. No court has found third-party standing when confronted with a conflict like that that exists in this case. Again, I would point this court back to its decision in Stanley 84 F 3rd 707. There, school districts sought to file a claim against the state for contribution on behalf of a class that included the same victims that had sued the school district. This court said that such a conflict is disqualifying because the school district would have been required to promote the very claim it was resisting. The same is true here. The abortion centers are pressing a claim that an injured woman would be resisting. So they don't have third-party standing. They also don't have a cause of action under Section 1983 because claims under that provision are limited to the party personally deprived of constitutional rights. They are not that party. It's universally appalled. You're pursuing three issues on appeal, is that right? That's correct, Your Honor. But that doesn't include the merits. It includes the merits of the vast majority. And the only issue we have to decide is whether to sustain the injunction. That's correct. That is correct as to balancing of the factors, but that is not correct as to legal issues. This court reviews legal issues as the likelihood of success. We review the reward of an injunction for abuse of discretion. If you could convince us that there's an error of law made somewhere  that would be helpful. If you implicated the thing adversely, then an error of law could constitute an abuse of discretion. But the review is for discretion. That is, as to Judge Lewis. Did she abuse her discretion in entering this injunction? And that's what you're trying to convince us. But you raised three asserted legal errors, but don't challenge the constitutionality of the statute. Not quite, Your Honor. The merits. You leave that unchallenged. No, Your Honor. We do not believe they're likely to succeed on the merits because they do not have third-party standing. We do not believe they're likely to succeed on the merits because they cannot state a claim. And we do not believe they're likely to succeed on the merits because they do not challenge the vast majority of the act and have no plausible argument to extend the preliminary injunction to the unchallenged provisions. So I've addressed third-party standing. As to the Section 1983 argument, all precedents, dozens of on-point precedents, hold that those claims are limited to a party who alleges a personal deprivation of constitutional rights. Just recently, the Second Circuit in Connecticut citizens... Can I ask you a question about this? I know you have some cases from other contexts, and tell me if I'm misunderstanding something. But all the cases finding that abortion providers do have third-party standing to assert the rights of women whose rights are being indirectly infringed, those are all Section 1983 cases. They are all effectively holding that the doctors have third-party standing to assert these claims under Section 1983, right? Yes, Your Honor. I'm anticipating your response will be nobody thought to make this argument in those cases. But nevertheless, we would be undoing 50 years of settled practice in a context in which you didn't raise this argument before the district court, and the district court did not analyze it or discuss it in the order under review. And that just seems like a mighty big step to even consider taking in this procedural posture. Thank you, Your Honor. A couple points. So first, there are dozens, again, if not hundreds of on-point cases that directly apply here. I agree that in several federal court cases involving abortion providers, this issue wasn't raised. But an issue that's not raised or discussed is simply not a precedent. Why was it not raised in this case before this judge? Well, it was raised below. It was primarily argued on the motion to dismiss where the district court said... I'm sorry, you're not arguing that it was raised in the preliminary injunction proceedings, correct? You did not argue this in the preliminary injunction proceedings. Your Honor, we address third-party standing generally. According to the district court... According to the district court, it decided... Well, can you just answer my question? Did you raise this argument apart from third-party standing, even if there's third-party standing, you lack a cause of action under 1983. Was that argument raised before the district court? It was not raised... During the preliminary injunction proceedings. It was not raised, but it was passed on. According to the district court. And where an issue is passed on, this court may consider it. I read the district court very differently than you do. I think it would have been the world's, let's just say, a large coincidence for the district court to have reached out to address an argument that was not before it, that is, let's just say, novel in light of several decades of case law. I understand the district court, in her later order, to be saying, look, I already determined that providers have third-party standing. The issue that was raised in the preliminary injunction proceeding under section 1983. And the district court appears to believe, as do all the courts to address this, that that is enough to resolve, in addition, any separate sort of statutory standing cause of action question. Because all of these cases hold that when providers have third-party standing, what they have third-party standing under is section 1983. So I do not understand the district court to have been saying, I read your minds during the preliminary injunction proceeding. I intuited somehow that you meant to break what has always presented as one claim into two claims, and I separately addressed the unstated second claim. Well, Your Honor, we just take the district court at its word, and it separately, in the motion to dismiss order, addressed third-party standing from section 1983. Plaintiffs are able, quote, under section 1983 to assert a claim on behalf of their plaintiffs, then an applied law of the case. And then the abortion centers, trying to get quick summary judgment, said, quote, the district court's legal analysis in the preliminary injunction order forecloses defendants' legal arguments as to third-party standing, severability, and plaintiff's ability to state a claim. That's docket 105, page 3. So they're trying to have it both ways. They're telling the district court you've already decided this, you don't need to consider it anymore, while telling this court, oh, no, the district court hasn't decided it yet, so you can't decide it. Finally, Your Honor, on that issue, I'd say even if it wasn't pressed or passed on below, and the district court said it passed on it below, it's a pure legal question. There's no factual development necessary. It was fully briefed here and there, and the alternative would be to go back down, move to the, dissolve the injunction, and then come right back before this court. And then I would simply go back to the severability point, which is that even assuming that the single challenge provision is enjoined, any preliminary injunction should not extend beyond that provision in the face of the clear severability clause here. I see I'm out of time. Any other questions? I can wait for rebuttal. I don't have any currently. Thank you very much. Counsel? Yes, hi, Your Honors. Good afternoon. May it please the court. The state in this case, as has been discussed, does not challenge the central conclusion of the preliminary injunction below. South Carolina's Senate Bill 1 would prohibit the vast majority of abortions in the state months before viability, and for this reason, it would flagrantly violate South Carolinians' federal constitutional rights. The state instead claims that the wrong people are in this court and that the scope of the district court's injunction at this preliminary stage was overbroad. Neither assertion is correct. First, as to this issue of third-party standing, it is bedrock law that litigants have third-party standing to challenge a statute that directly restricts their activities and that violation of the challenge statute would violate the constitutional rights. Now, Mr. Miller is arguing that's not so in this case because there's an inherent, he asserts an inherent, conflict of interest between the health care provider and the patient in this case who, under this statute, may be able to sue the health care provider so that their interests are potentially at odds. What's your response to that? I'll make three responses to that. First, in June Medical Services v. Russo, the Supreme Court directly addressed the third-party standing of abortion providers, relying on, of course, decades of precedent before it, and found that the third-party, that third-party standing did apply in the circumstance that I just described. The court in that case said at page 2119 of the opinion, this is the plurality opinion, a suggestion that, quote, this case is different because the plaintiffs have challenged a law ostensibly enacted to protect the women whose rights they're asserting. Quote, that is a common feature of cases in which we found third-party standing. And then, of course, Chief Justice Roberts, in the fifth vote, joined that plurality opinion in full at footnote four of his concurrence. That is a binding precedent of the Supreme Court. It binds this court, and it directly refutes Mr. Mills' position as to a conflict of interest. Second. Mr. Mills is asking us to overrule the Supreme Court. Well, Your Honor, I would respectfully suggest that that is not within the power of this court. June Medical Services That's what I'm talking about. June Medical Services That's what I'm getting at. We don't have any power to overrule the Supreme Court. You cannot do that. And the other thing that I would know with respect to this conflict argument is that, you know, the state in this case would have the court believe that this is the first abortion restriction ever where a legislature thought to put a private right of action into the additions to the abortion code. And that could not be further from the truth. I mean, for example, this court's decision in Stewart v. Kamnitz a few years ago about an ultrasound requirement in North Carolina, that had a private right of action to it. Planned Parenthood Central Missouri v. Danforth 1976 That one, again, another abortion restriction. There was a potential for liability and damages. Gonzales v. Carhartt another Supreme Court decision 2007 the Supreme Court there actually in the course of deciding whether the so-called Partial Birth Abortion Ban Act could stand referred to the fact that there was a provision in the act authorizing civil action. And they said of it, it is not of relevance here. I could go on, for example, the Planned Parenthood of Wisconsin v. Van Hollen case. The overarching point is that it is commonplace that states, in addition to state enforcement mechanisms, in many instances incorporate private rights of action. And were the state correct that simply doing so could somehow insulate the state's own enforcement authority from judicial review, it would be a dramatic reworking of the state of jurisprudence and would lead to as Your Honor said, sort of overruling of the Supreme Court. That is not neither practiced nor condoned by precedent. I would also say with respect to third party standing, I know Mr. Mills cited a lot of case law. I heard him refer to a couple of cases, one called Stanley. I don't have it in front of me in another Connecticut case. By my telling, those are not cited in the briefs. And so I would suggest respectfully that to the extent the court is going to consider something like that, a 28-J letter or some opportunity for us to have a reasonable response, a time to respond would be appropriate there. The other thing that I will say as to additional case law that he mentioned, he talked about Elk Grove, for example. Elk Grove was a case where the father who brought the claim on behalf of his daughter was found not to have standing, prudential standing due to a potential conflict of interest because the child's mother and her sole legal representative had intervened in the case to dispute his ability to go forward on her behalf. And if this court, you know, needs any further evidence that that case is not going to have the broad sweep that Mr. Mills suggests, you could look, for example, to Justice Rehnquist's concurrence in that case where he talks about the narrowness of the opinion and suggests that it is precedent good for this day only. It does not affect this case and certainly not in the face of the binding precedent that we have cited in our briefs.  would be true of Kowalski. Kowalski was a case where the traditional two-part third-party standing test the Supreme Court applied, looking both at a close relationship and whether there was a hindrance on the third party to bring their own claim. But, of course, in this court just a couple of years ago in the Maryland shout issue case that we cited in our brief, this court looked at Kowalski and it specifically said it talked about the long line of precedent in which the Supreme Court has relaxed those two Kowalski standards and pointed to cases like Craig v. Bourne and others that we rely on where a party has been directly regulated by the challenge statute and the enforcement of that law would violate the third party's constitutional right. Beyond the issue of third party standing, I want to move on to this second issue that came up, whether 1983 provides a cause of action to plaintiffs who are proceeding as our clients are here on behalf of third party standing. To Judge Harris's question about whether this came up in the district court, I think the answer to that is really no at the preliminary injunction date. And I do need the court's motion to dismiss order in the same manner as your honor does. What the court was holding, she acknowledged that the governor in that motion had brought both a third party standing challenge and a challenge whether section 1983 provided a cause of action. I prefer to have held, which is consistent with the cases we cite at page 33 of our brief, the Van Hollen case, the special case, that where someone has third party standing, they by extension would have a cause of action under section 1983. That is how I think   would have handled that. If the defendants were confused by that, they could have asked for clarification from the district court. They did not do so. Again, as I mentioned the 7th and 8th circuits, I do think it bears emphasis that what the defendants are asking this court to do would not only upend decades of practice, but would create a circuit split where there is no rational basis for doing so. And we would urge your honors to the extent that you reach this issue to firmly reject the    Thank you, Mr. Miller. Just one last points about that. I think Mr. Miller suggested that at docket 105 in the district court, we had effectively conceded that the preliminary injunction order somehow decided that this 1983 cause of action, I think again, consistent with what the district court actually said, our position is that where a litigant is proceeding in reliance on third party prudential standing, that basis alone is sufficient to permit them to bring a  that is consistent with section 1983 and that section 1983 supplies that cause of action. I don't think there is any concession or inconsistency in the position that we have maintained throughout the case. Third and finally, I do want to address the severability issues that the state has raised. The district court here in our view correctly tells that SB1's other enforceable provisions could not be severed from the six-week ban for purposes of the injunction. The district court faithfully applied severability law. So at pages 296 to 299 of its decision, it went through. But Ms. Murray, didn't South Carolina have in place several of these other provisions before the heartbeat bill was passed? And if so, why couldn't they be severed if they were in place before the heartbeat bill or something similar was in place before the heartbeat bill itself was passed? So if I understand your question correctly, correct me if I don't. So they could stand separately because they have before. But to be clear, at page 303, the scope of the court's preliminary injunction, she did not enjoin preexisting statutory mandates. Right. I understand that. Just go ahead and explain to me how some of these things could not stand separately, how it's all intertwined. The ultrasound, for example. Yes. So the district court, as I said, it recognized that, you know, it needed to look to the standard under state law. And as we talk about in our brief, that standard looks at whether the portions of the statute are wholly independent or mutually dependent on one another. In this case, the section 3 of the act is to ban abortion upon detection of cardiac activity. So the portion of the ultrasound requirement, for example, that your honor is asking about, was adopted within the same section, section 3 of the act, in order to facilitate the enforcement and essentially facilitate the action of the prohibition in the six-week ban. So that requirement has no medical purpose beyond facilitation of, well, it has no medical purpose, but the purpose in the statute is the facilitation of the ban. The same is true, for example, if you look at exceptions within section 3. So section 3 is actually, it has multiple provisions in it. One of them is the mandatory heartbeat requirement to attempt to detect a heartbeat. There are also exceptions that are incorporated into section 3. And so the district court said he would have you slice and dice up this law. And I think the district court was correct in rejecting that argument when if you look at other portions of section 3, the heartbeat attempt to detect the heartbeat requirement, the requirement that doctors note whether a heartbeat was detected in the medical records, whether the requirement that the doctors in section 4 report whether they have relied on exceptions to the heartbeat ban, all of those pieces of the statute work together to facilitate the ban. And I think certainly it would help me. I'm really struggling with this severability thing. I'm trying to figure out how much of your argument depends on purpose and how much depends on putting to one side purpose. Could these provisions operate independently? So let me ask you this question. If you took from section 3, if you took just the requirement that before an abortion provider performs an abortion, you have to do the ultrasound, you put that together with the thing in section 5 about and if the ultrasound reveals a heartbeat, you have to tell the woman that and whatever the associated statistics about the chances that you will, that the woman will carry to term. So if you cut and paste it, this one section from section 3 and section 5, that could operate independently as an informed consent statute, right? Well, two points to that, your Honor. As to your first question about how much we are relying on purpose, I think certainly under South Carolina law, purpose is a relevant consideration, but I don't think that this needs to be an entirely purpose-driven inquiry and shouldn't be under the governing South Carolina law standard. If it's not about purpose, why shouldn't we do the exercise I just did and say let's sever those two provisions, slap them together, and now look, you have a new informed consent law? Well, I mean, candidly, your Honor, I think your description in part shows why that wouldn't be proper. The idea that you would have to kind of cut and paste and move the statute around seems precisely like the kind of legislative work that the U.S. Supreme Court has said in cases like AI, the court should not be involved in, and it is incumbent on state legislatures to, you know, that they can certainly say what they want about how the law should be enforced or severed, but they cannot push their work off onto the courts. And I think what you've described is precisely that scenario. As to your specific question, though, about the heartbeat requirement, the requirement to attempt to detect cardiac activity and then report that to the woman, I think we read that portion of the statute again to facilitate the ban. There is a requirement that once you detect a cardiac  you must report that. But of course you do, because at that point, she is banned in the state of South Carolina from having an abortion. So I think in that context, the mandatory disclosure is in fact just a disclosure that the ban applies and is part and parcel of the portion of the statute that the district court held must be enjoined. If we did the cut and paste, and you would also so that you put together the ultrasound requirement with informing the woman of the results and saying some things about the statistical chances of caring to term, would that be constitutional under Stewart? Is that kind of an informed consent provision constitutional in the Fourth Circuit? Well, Your Honor, I do want to be clear. I think it would depend on the particular statute. Our position is not that a state cannot require informed consent related mandates or require, in some instances, ultrasounds. That is not what we are arguing. We think it is a statute-specific analysis under the particular state severability law issue. So I think to your question, could South Carolina have had its legislature taken its own pieces of the statute and cut and paste them in a  could have been different, that could have satisfied both constitutional review and have been severable? Maybe, probably, depending on how they crafted the law. But what this court has before it is the law that they actually adopted. I think the district court was correct in not trying to step in with a red pen to try to come up with a replacement for a law that the legislature clearly crafted as a cohesive goal intended to ban abortion at the earliest stages of pregnancy in the state of South Carolina. So I think if unless the court has any further questions, we would urge you to affirm the district court's preliminary injunction, which faithfully applied binding law and carefully held that SB 1 is not severable. Thank you, Your Honor. Thank you very much, Ms. Murray. We appreciate it. Mr. Mills, you reserve time. Thank you, Your Honor. I'll start with severability. As Judge Harris suggested, there are two questions here, purpose and whether it's capable of independent operation. We know the purpose. The text says it. The legislature said it would have adopted each and every word of the statute. The only question is independent operation. What is the purpose? It's that each and every provision go into effect. Every word not invalidated must go into effect. The act says that expressly. The only question is whether the other provisions What is the overarching purpose of the statute? It has multiple purposes. Part of it is to protect unborn life. Part of it is to give mother enough information to make an adequate choice. The U.S. Supreme Court in Casey said that helps mothers. The title of the statute is South Carolina fetal heartbeat and protection from abortion act. What does that mean? Protection from abortion. I would assume it means what it says. Part of the protection from abortion was the single challenge provision. Some might choose not to have an abortion. Both ways are protection from abortion. We were talking about the purpose of the statute. I didn't understand. You pointed to the last purpose which is to help a pregnant woman make an informed choice about whether to continue a pregnancy based on the detection of a fetal heartbeat. I don't understand that because there is no choice under the statute. Does that purpose have both purposes? Banning all abortions once there is a heartbeat and helping a woman make an informed choice about whether to have an abortion if there is a heartbeat. Is this contemplating that maybe one of the purposes will turn out to be unconstitutional? How are these two purposes supposed to interact in your view? Your Honor, I think it's not unusual for legislation to have multiple purposes. I think the severability clause expressly says what the General Assembly wanted to happen. This is a genuine question. I understand what the severability clause says. This is just really a logic problem I am wrestling with. How can the same statute have as one purpose to prohibit abortion once there is a heartbeat and as another purpose to help women make informed choices about whether to have an abortion after there is a heartbeat? They just seem logically inconsistent, right? I don't think so, Your Honor, because the mother has a choice to make before the Act's prohibition goes into effect. The Act is not an outright prohibition. The Act gives mothers in several circumstances the choice even after a heartbeat to still choose abortion. In those circumstances, of course, more information could be relevant to a mother's decision as to what to do in those circumstances. I just missed that. Say that again. Even though once there is a heartbeat, there can be no abortion, the woman might still want to know what the odds are that she would have carried to term? No, correct, Your Honor. That would be one example. So, consider what would have happened if the District Court had only enjoyed the challenge provision. Could the other provisions have taken effect? Of course, they could have. They are in effect in numerous other states. They have been upheld by numerous other courts. As Judge Thacker suggests, section 330 requires this information to be given to the mother. Section 740 gives the mother a private right of action. The section already exists. Of course, it is capable of independent operation. The other provision only   provision. It only challenges one provision, especially on a preliminary injunction where they have the burden to show the likelihood of success and the other factors as to each and every provision. They haven't shown that at a minimum as the remainder of the statute. I see my time has expired. Unless there are other questions, I urge this court to reverse. With respect to severability, I do take the gist of your argument to be you can sever out from this statute like a heightened informed consent requirement. I guess I would like to know in your view whether it's clear that that would be constitutional under Stewart. I know your brief says informed consent provisions are often upheld, but we do have Stewart on the books in the Fourth Circuit. I guess I would like to know your view as to whether it would be constitutional if it were severed out. Now we're back in front of the district court seeking to enjoin the severed portion. Thank you, Your Honor. I'd have two responses to that. First, the other side hasn't made any Stewart challenge so that's waived. They have the burden of proof on preliminary injunctions. That's because they don't believe there is an informed consent provision in the statute. They think the whole thing is a six-week ban and that's what they're challenging. I don't think they're responsible for sort of challenging the part you think should be salvaged. Well, Your Honor, they could have made multiple claims in their complaint. They could have attacked different parts of the statute. They chose not to. They don't think they have independent operation. As far as they're concerned, this hypothetical informed consent statute literally does not exist. You think it exists and I'm trying to figure out whether I think it exists and it would be helpful for me to know whether if I thought it existed it would be constitutional. And I'll address that shortly, Your Honor, but their complaint could have attacked the statute in the alternative. That's how complaints regularly are. They could have said even if there's an informed consent, that's not allowed under  statute. The other side refused to make that argument. But this case is different from Stewart because the big issue was that the woman had no choice. The images had to be described to the woman. Here, the law gives the woman the opportunity to hear her unborn child's story. Even if there had been a challenge. Under section 5, it says the woman must be informed about the probable gestational age. Doesn't she have to be informed that a heartbeat has been detected and to the best of the physician's knowledge of the statistical probability of bringing the human fetus to term? I thought that was  woman has to be informed of. That's correct, Your Honor. I don't think that sort of factual disclosure was an issue in Stewart. All right. I thought I misunderstood too then because I thought you just said that she's just given the opportunity to listen to the heartbeat and all that stuff. But she's required, not given the opportunity? No, Your Honor. She's just given the opportunity to listen to the heartbeat and to view an ultrasound. The section 5 provision is about purely factual information based on medical evidence of the patient having to see or hear about the ultrasound. I agree that it's not factually identical. We just are in this interesting posture where in the Fourth Circuit we apply strict scrutiny to this kind of ... The Fourth Circuit is in a somewhat different position than some other circuits and so these informed consent provisions get a more careful look under Stuart. I just had questions. Yes, Your Honor. I agree that there might be a more interesting legal issue there had it been raised. It's not been raised so it's not before this Court. This Court has not raised it. We appreciate your work. Ms. Murray, we appreciate your work and we're sorry we're not in Richmond and we can't reach you personally. Maybe next time. We'll take the case under advisement and Madam Clerk, we'll adjourn the Court until 8.30 tomorrow morning. Thank you, everyone. This Honorable Court stands adjourned until tomorrow morning. God save the United States and this Honorable Court.
judges: Robert B. King, Stephanie D. Thacker, Pamela A. Harris